[Civ. No. 3753. Third Appellate District.—April 30, 1929.]

A. VAN NOY et al., Appellants, v. ANN GOLDBERG et al., Respondents.

Leslie H. Kranz for Appellants.

Pacht, Pelton & Warne for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment in favor of the defendants in a suit to set aside a trustee's conveyance of real property which was executed upon foreclosure sale for default in the payments of principal and interest secured by a trust deed. The appellants contend that the trust deed was executed in violation of the California "Usury Law" (Deering's Gen. Laws 1923, Act 3757, p. 1384), and therefore void.

The appellants were the owners of lot 3, block "C" of Kurtz and Bradshaw's subdivision of the Schumacher tract of Los Angeles, California, which was subject to a mortgage of $11,000, upon which lot they had constructed a four-family dwelling flat. The builder of this house was George J. Diebolt. After the completion of the dwelling considerable indebtedness remained unpaid for the security of which a number of mechanics' liens had been filed. To complete the financing of this structure, R. F. Boyles, the son-in-law of appellants, who held their power of attorney for that purpose, negotiated the execution by appellants of a subsequent note dated September 18, 1925, to George J. Diebolt for $7,000 at eight per cent interest, payable quarterly, secured by a deed of trust on said premises. By the terms of this note the principal became payable in installments of $100 or more on the first day of each month beginning with November, 1925, and continuing to and including September 18, 1926, at which last-mentioned date the whole principal and interest became due. For default in the payment of any installments of principal or interest, the entire unpaid portion became due at the option of the holder. This note and trust deed was executed subject to the prior mortgage for $11,000. Default in the payment of any installment of principal or interest due upon this first mortgage lien authorized the holder by the terms of the trust deed involved in this litigation, to pay such deferred installments and after demand for repayment thereof, to also declare this entire second note due on that account. This $7,000 note and trust deed were subsequently sold and assigned to the respondent, Ann Goldberg, by Mr. Boyles through a broker by the name of Leon Shevitz for the sum of $6,300, which was paid in cash to the Union Bank and Trust Company of Los Angeles, named in said deed as trustee.

Five payments of $100 each were subsequently made upon this note discharging the installments due thereon only to the first day of March, 1926. On the first day of August, 1926, appellants were in default of the payment of two quarterly installments of interest aggregating approximately $170; five $100 installments of principal, and about $800 delinquent payments due upon the first mortgage lien. The respondent, Goldberg, made a fruitless de-

mand upon appellants for the payment of these sums. August 7, 1926, due notice of default and sale of the premises pursuant to the provisions of the trust deed was given and published. August 31, 1926, the property was sold to the respondent Goldberg and a trustee's deed of conveyance was executed and delivered to her September 2, 1926. This suit was then commenced September 22, 1926.

Appellants' theory of the transaction is that respondent Ann Goldberg agreed to loan them $6,300 at eight per cent interest, in consideration of an additional bonus of $700, which is represented by the difference between the face amount of the note and the actual cash paid; that the note and trust deed are therefore in violation of the Usury Act of California and void, or at least that the appellants were not in default for the reason that the $700 bonus should have been applied to the payment of the deferred installments of principal and interest and that the foreclosure sale was therefore premature and void. Appellants' theory is expressed in their brief in the following language: "The transaction was a loan from respondent Ann Goldberg to appellants of the sum of $6300.00, negotiations for which were handled by agents of the respective parties, Leon Shevitz being the agent for Ann Goldberg and R. F. Boyles being the agent for appellants, and George J. Diebolt being a mere dummy; that the purpose of using a dummy was to avoid the usury laws of California."

The court, however, adopted specific findings against the appellants on each of these issues, and the evidence amply supports these findings to the effect that they did not borrow $6,300, or any other sum *from the respondent* Ann Goldberg; that the $7,000 note and trust deed were not executed at the request of said respondent, but that she was a subsequent innocent purchaser thereof for a valuable consideration; that it is not true that the said George J. Diebolt, the payee named in said note and trust deed was a mere dummy or nominal beneficiary thereof, but that upon the contrary the appellants executed and delivered said instruments to him at his request for an adequate consideration; and that said beneficiary thereafter sold and assigned them to the respondent at a discount for the sum of $6,300; that said instruments were not

executed in violation of the Usury Law of California, and that the appellants defaulted in the payments of both principal and interest on account of which the respondent as a *bona fide* holder thereof declared the entire indebtedness to be due, whereupon the trustee foreclosed and sold said equity to the respondent Ann Goldberg pursuant to the terms of the trust deed, she being the highest and only bidder therefor. Respecting the original sale of this note and trust deed Mr. Shevitz testified:

"Mr. Levy . . . told me that he knew of a party that had a trust deed for $7000 that could be bought at a discount, . . . Mr. Boyles . . . explained that he sent him (Levy) to me in regard to that trust deed. He told me that he had built a four-flat building and had gotten heavily in debt and that in settlement with the contractor he had given the contractor a trust deed in payment for the building of the property. . . . The name of the contractor was Diebolt. . . . He told me that there were liens on the property; that he was being annoyed, as well as the contractor, and that . . . the contractor would have to sell the trust deed immediately. . . . One or two days after (this) . . . he took me over to . . . Mr. Diebolt . . . (who) verified the statements made by Mr. Boyles . . . I had called Miss Goldberg, and told her that there was a trust deed for sale on a four-flat building, . . . a $7000 trust deed, to be bought for $6300."

It does not appear from the terms of the note or trust deed that there was an agreement to pay illegal interest which is prohibited by the Usury Law of California. Upon a charge of usury, however, parol evidence is admissible to show the actual nature of the transaction. (27 R. C. L. 212, sec. 13.) The existence of such an illegal agreement must of necessity appear affirmatively from the evidence adduced at the trial. The burden of showing that a note provides for usurious interest is upon him who challenges the transaction as illegal. (27 R. C. L. 268, sec. 71.) Since the evidence upon this subject is conflicting, this court will be required to assume that no such agreement was made. The appellants' theory of the transaction is supported only by the testimony of their own attorney in fact and son-in-law, Mr. Boyles, and his contractor, Diebolt. It is a significant fact that neither of

the appellants was called as a witness to deny the respondent's assertion that she was a *bona fide* purchaser of the note for the sum of $6,300. The trial court evidently assumed that a conspiracy may have existed between the makers of the note and their son-in-law and his contractor to finance the troublesome indebtedness for construction of the dwelling by the execution and sale of a promissory note, and to then attempt to defeat it by a claim of usury. At least the circumstances indicating this situation are suspiciously unfortunate. ■ The Usury Act is intended to prevent the charge of an excessive rate of interest, and may not be used as an engine to perpetrate an injustice. (*Haines* v. *Commercial Mtg. Co.*, 200 Cal. 609, 621 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805].)

The appellants contend for a strict construction of the Usury Law, for the reason that the courts do not look with favor upon the harsh method of terminating the interest of a debtor in real property, by means of the foreclosure of a trust deed which reserves no right of redemption. *Hodgkins* v. *Wright*, 127 Cal. 688 [60 Pac. 431], *More* v. *Calkins*, 85 Cal. 177, 188 [24 Pac. 729], and 25 Cal. Jur. 83, sec. 67, are cited in support of this claim. A sale under a trust deed may be set aside when it appears that the debt had not matured at the time of the alleged default. (*Huene* v. *Cribb*, 9 Cal. App. 141 [98 Pac. 78].) The binding validity of trust deeds and their provisions for forfeiting the interest of a debtor for default in its payment have, however, been recognized by numerous California authorities. (25 Cal. Jur. 6, sec. 2.)

■ In the present case the default of the appellants for failure to pay both the installments of principal and interest was properly declared by the respondent. ■ A promissory note, by its terms, may appropriately provide for the payment of the principal in installments, and authorize the holder thereof to declare the entire amount due upon default in the payment of any installment of either principal or interest. (*Haines* v. *Commercial Mtg. Co., supra.*) ■ There existed in neither the note nor any secret agreement on the part of respondent concerning the payment of the original loan any provision for the payment of illegal interest. This disposes of appellants' contention that the entire note is void for the reason that

it provided for the payment of an illegal rate of interest. ██ But even if this were true an agreement to pay usurious interest will not vitiate the entire note, nor prevent the holder from recovering the valid principal sum at the time of its maturity. In *Haines* v. *Commercial Mtg. Co., supra*, at page 622 of 200 Cal. [255 Pac. 806], it is said: "Even a casual reading of the statute itself shows that the legislative intent was not to declare the whole contract void, but only the portion thereof relating to interest." (*Rice* v. *Dunlap*, 205 Cal. 138 [270 Pac. 199].)

The alleged defect in the notice of foreclosure also depends upon appellants' contention that there existed an agreement to pay an illegal rate of interest. For the reasons heretofore assigned, this claim is also without merit.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.